Good morning, Your Honors. By way of introduction, I'm Dan McCauley for Larkin and Sheila Simmons, who are with me in the courtroom today. I'd like to start out by stating that we're up here as a result of a motion to dismiss, and as we all know, in the law, motions to dismiss are frowned upon, and I believe this case is a reason, is one of the exhibits why they're addressed and that have been submitted in the briefs, such as, you know, a beneficiary is not described in the deed of trust, and nor is nominee. Therefore, that would relate back to the statutory definition. I think you all can have been apprised of that in the briefs, and it doesn't need to be further argued here unless you have questions. I think that the Hogan case, the Arizona Supreme Court case, sets forth the prerequisites for a homeowner to bring forth a suit like the Larkins brought forth, and that they should declare what Mr. Hogan failed to do, was declare that the bank in question did not own the loan. We have argued in spades that this financial institution, Citibank, doesn't own the loan. And I think where my clients and a lot of members of the public have a— You would agree that the show-the-note type of theory was foreclosed by Hogan, correct? Yes, Your Honor, and I'm not making a show-me-the-note argument. I'm making a standing argument, as was made by the lawyers before me. And I think a critical point is, it's an uncontrovertible fact, and has been presented to you all, that Citibank entered into a consent judgment with the Department of the Treasury indicating that there was a lot of questionable process in foreclosures as managed by that institution. My clients turn around and say, we claim to be victims of exactly that sort of behavior. When the federal government makes a case that a bank or financial institution has not properly followed foreclosure procedure, they have rights and they have a case. But when we as victims come forward and say, unequivocally, our research indicates this loan was never transferred into the trust that Citibank managed. If the loan was not transferred into that trust, Citibank has no standing. There's nothing in the record from Citibank that indicates they have any standing here at all. And we against them are fraudulent on their face in violation of 33-420. Arizona has been looking at that. And there's a series of decisions, starting with Stauffer v. U.S. Bank and Steinberger v. McVeigh, where our courts have looked at these documents and indicated that they are assignments of an interest in property. And if they are illegitimate, then there would be no standing for a financial institution like Citibank to come forward. And our state and the United States is awash with these fraudulent documents. There was a public company, lender processing service, that had a division, DocX. DocX created these documents for banks en masse. The United States Attorney for the Central District of Florida indicted DocX and its president. They pled guilty. They paid a substantial fine. And the U.S. Attorney for the Middle District of Florida stated publicly that she, that Lorraine Brown, the of these questionable documents. And where is this in the record? I believe, I believe, Your Honor, that you have to forgive me. So let's confine ourselves to the record of this case, shall we? Okay. Well, I would say that the record clearly indicates that the documents have been called into question. And they create, based on, based on what is in the record, it creates a question of fact substantial enough to, to overcome a motion to dismiss. And that my client was, filed a complaint that comported with the standards for the state of Arizona. The case was removed. They really had to fight their entire case and prove their case to the district court judge based on a 15-page response to the motion to dismiss. And the lower court didn't give credence to the, to their arguments that if, if their allegation that the notaries here, that the signers of these documents didn't have authority to convey an interest in property for the institutions they ostensibly represented, then, then this bank has no standing. And it's a travesty, in a sense, in the law that the burden to prove standing under the UCC or any other form of law gets suddenly transferred from the person trying to claim the loan to the person saying, wait a minute, you don't have a right to claim the loan. I think traditionally, in cases other than foreclosure cases, if you make an allegation that you don't have standing, then the other side, whether it's the defendant or the plaintiff, would have to come to the court and say, wait a minute, we do have standing and here's how we have that standing. And if that had been done in the lower court judge, we wouldn't be here today. I contend to you that the reason they're not proving their standing is they can't, because that loan was never transferred into the trust. And the people that examined that and created a report, which I believe has been submitted on the record, indicate clearly that's their finding. There's no contravention. What we have here is a sworn complaint, verified in effect testimony, up against lawyer speak. There's nothing but lawyers on the other side saying, well, this is what happened and this is what we're entitled to. But there's no factual basis or no representation. They could have had an affidavit from the bank or a banking officer that included, here are the different transfers and this is how we got into the trust and we do own it. And that would have been a rather simple procedure. So I would suspect if that was possible, we'd have it. And I think that, unless you have questions about that, I'd like to move on to another issue, and that is, frequently in these cases, as in this case, a decision is made that when a homeowner signs the deed of trust, they agree that the loan may be sold. My clients agree with that. There is no question about it. When you sign it, you agree that the loan will be sold. What none of these homeowners, which my client represents a class, agree that they're not entitled to know who they're in business with. It's standard contract law that you are entitled to know who the contracting party is you are in business with. If they want to securitize these loans, certainly securitization is not illegal. I have no complaint about securitization. But if you are going to securitize a loan, I think it's incumbent upon the financial institution to turn to the homeowner and comport with the deed of trust, and identify the lender as called for in the deed of trust, and not use a nebulous entity that's a nominee who I don't know what a nominee is. I don't think nominees have substantial power to represent anybody. Or beneficiaries, undefined beneficiaries, that now fall back to the standard set forth in our statute, which says, to be a beneficiary, you have to have a financial interest in the loan. So there's no financial interest on the part of MERS or the beneficiary in this incidence, which is standard. And then the third thing I think really needs to be at least reviewed is whether these contracts are contracts of adhesion under Arizona law. And Darner, the Darner case cited, has long been the law in Arizona. There is a series of subsequent decisions that clearly identify what under Arizona law is a contract of adhesion. And I understand what the ramifications of a ruling will be on that. But these are clearly and unequivocally contracts of adhesion. They're pre-printed forms set forth by Fannie Mae. You can't negotiate any of the terms and conditions. If every homeowner, and you all I'm sure have had mortgages in the past too, when a bank presents you with those documents, you have no opportunity to negotiate. You have no opportunity to change a term and condition. If my clients had said, whose MERS? We don't want them in here, that bank wouldn't have given them a loan. Countrywide would be presented to a jury so that the people on that jury can decide whether these standards are adequate or whether we need to look at these situations and get a balance. What we have right now is no balance. We have clients like, people like mine who feel they've been victimized and they don't get a day in court. They're put on a motion to dismiss. Your time has expired unless the panel has questions. Thank you. Good morning, Your Honors. May it please the Court, I'm Bob Sheely here on behalf of all the appellees from the law firm of Brian Cave in Phoenix, Arizona. I want to set some background. Much of this is set forth in the briefs, but I will just make note of it at oral argument here. This is a nine-count action that is the latest in a long string of the identical lawsuit having been filed by the same lawyer, not Mr. McCauley here who has stepped in, but by a gentleman named Donald O. Loeb. I personally have handled six of those cases in the District Courts of Arizona. Judge Martone, the trial judge on this, personally handled and dismissed five cases, and this is the fourth time this complaint has come up to this Court. Two of the decisions which we didn't discuss by this Court were unpublished. They are in the Federal Appendix Sedis, the HSBC 558, Fed Appendix 757, and Pope v. Aegis 565, Fed Appendix 62. Both of those cases are from 2014. But the identical case also came up before this Court in a case called Zadroni v. Bank of New York, Mellon 720 F3rd 1163, 2013. The District Courts in Arizona, the Ninth Circuit and the Supreme Court of Arizona have repeatedly held that the theories that are brought up in this complaint have no merit. This Court has decided and discussed extensively the role of MERS in the Cervantes case. I don't know how a person challenging MERS standing can come to this Court and challenge the MERS issue and never, ever even mention Cervantes. We think that the brief was lacking in that regard. The appellant's brief also raises numerous issues that were never raised in the record below. There's no evidence. They talk about pooling and servicing agreements that are not in the record, and repeatedly make statements of fact that are not in the record and that are not in the law. And I sit here and listen to my esteemed colleague raise issues that, again, were not raised below. This issue of contract of adhesion was never raised below. This issue of whether there was a violation of Arizona statute 33-420 was never raised below. There's not even a count in the complaint that addresses 33-420. My esteemed counselor asked about having discovery allowed. Well, it's Hornbook law that you have to state a claim before you get into discovery. This Circuit, the District Court of Arizona and the Ninth and the Supreme Court of Arizona have made it clear that these clauses of action cannot go forth. In essence, although the judge or nine clauses of action, they really break down into three categories. One, whether the issue or whether the presence of MERS in the deed of trust is legitimate and whether MERS has the ability and the power to assign a beneficial interest upon default. That was addressed and just as a dead doornail, Your Honor, as a result of Cervantes, that issue has been resolved and this Court has resolved that in the Ninth Circuit. So from my client's standpoint, we shouldn't see complaints about that anymore, yet we see this continuing line of new complaints, identical complaints, uninterested in what the law has said. Similarly, we see in this complaint and we've seen in its brethren, this question about whether the UCC controls a real estate of the United States. The Arizona Supreme Court addressed that in Hogan. Pardon me, Your Honor? The Arizona Supreme Court addressed that in Hogan. Yes, so you know that. I can move on. And the third issue is whether the show-me-the-note issue is acceptable. And of course, the Supreme Court again in Hogan has just killed that. It's not even an issue. It shouldn't even be raised in complaints anymore. So I'm content to otherwise rest on the breeze. I think the district court got these issues right. I think the Supreme Court of Arizona has gotten these issues right. I believe the Ninth Circuit has gotten these issues right and they've been resolved. And there really is nothing for this Court to do except to affirm the trial judge below. And unless the Court has any further questions, I'm happy to sit. Thank you, Your Honor. Thank you, Your Honor. The case will be submitted for decision.
judges: Thomas, Tashima, McKeown